In the United States District Court
for the District of Kansas

————————

Case No. 24-cv-02245-TC

————————

ASPEN CHACON,

*Plaintiff*

v.

WELLSKY,

*Defendant*

————————

## MEMORANDUM AND ORDER

Aspen Chacon sued her former employer, Wellsky, alleging unlawful discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Doc. 1. Wellsky moved to dismiss Chacon's retaliation claim. Doc. 4. For the following reasons, that motion is granted.

## I

## A

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation with multiple defendants).

Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

**B**

In March 2021, Aspen Chacon started working for Wellsky as a sales representative. Doc. 1 at ¶ 1.[1] At first, she reported to Wellsky's general manager, Aaron Winkelmann. *Id.* at ¶¶ 16–17. Although Chacon "struggled under Winkelmann's management style," her performance improved when Jeremy Henry became her direct supervisor. *Id.* at ¶¶ 16, 20, 21. Henry reported directly to Winkelmann, but Chacon still worked with both of them on a daily basis. *Id.* at ¶¶ 17–18.

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

While Chacon worked at Wellsky, she earned a dual master's degree in healthcare administration and business administration. Doc. 1 at ¶ 25. She alleges that "Winkelmann felt threatened due to Plaintiff being a woman with better education and credentials than him." *Id.* at ¶ 28. She also says Winkelmann "had a history of treating women differently than men" and that he "provided fewer opportunities to women in the office than men." Doc. 1 at ¶¶ 29–30. When Chacon "attempted to address this issue with Winkelmann directly," she states that he "did not receive the criticism well." *Id.* at ¶¶ 31–32.

Beyond Chacon's gender-related concerns, she had concerns about unethical business deals. Doc. 1 at ¶¶ 33–34. She brought these to Winkelmann's attention, too. *Id.* at ¶ 34. But Winkelmann "did not want to entertain" Chacon's concerns. *Id.* at ¶ 35. Chacon believed this is because "Winkelmann did not like being called out by a woman and punished Plaintiff for bringing attention to these issues because of her sex." *Id.* at ¶ 36. Chacon also says that Winkelmann frequently spoke to her "in a derogatory manner." *Id.* at ¶ 37.

In June 2023, Winkelmann learned that Chacon is a lesbian. Doc. 1 at ¶ 41. He was walking past Chacon's cubicle and saw a photo of Chacon with her girlfriend on Chacon's desk. *Id.* at ¶ 44.

A few months later, in September 2023, Chacon was working on two business deals. Doc. 1 at ¶ 47. She scheduled at trip to Texas to meet with the client and work on the business deal. *Id.* at ¶ 48. Before she left, however, her colleague discovered an error in one of the documents for the deal. *Id.* at ¶ 49. Her colleague told her to change it but "assured her this was not a big deal." *Id.* at ¶ 51. Chacon went to Texas for the trip. *Id.* at ¶ 52. When she returned, she sent the final sales contracts to the client. *Id.* at ¶ 53.

On September 21, 2023, Winkelmann reviewed the sales contracts. Doc. 1 at ¶ 55. He discovered that there were comments left on one of the documents. *Id.* Chacon states that it "was not uncommon" for this to happen. *Id.* at ¶ 58. Chacon corrected the mistake and sent the revised documents back to the client. *Id.* at ¶ 59.

The next day, Henry set up a meeting with Chacon and a human resources representative. Doc. 1 at ¶¶ 61–62. Henry informed Chacon that she was terminated. *Id.* at ¶ 63. He told her that Wellsky terminated her because she "lacked attention to detail which resulted in proprietary information being left in a client's document." *Id.* at ¶ 64.

3

On October 27, 2023, Chacon filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging sex discrimination. Doc. 1 at ¶ 8. The charge included a spot where the claimant could check the appropriate box for what type of discrimination the claimant was alleging. Doc. 5-1 at 2. Chacon checked the box labeled "sex" but not the one labeled "retaliation." *Id.* The charge also includes Chacon's narrative of what happened. *Id.* at 2–5. In relevant part, Chacon wrote:

> [Winkelmann] was a difficult boss to work under and did not appreciate that I was a vocal female employee. I also noticed that other women working under Winkelmann received fewer opportunities than men and tried to address this with him. I saw my teammates entering into deals that felt unconscionable to me because they put the client at a disservice; however, when I raised these concerns, I was met with pushback and little to no change in behaviors. He was abrasive to work with and I generally avoided speaking with him as much as I could while not [a]ffecting my job performance. [Winkelmann's] attitude towards women was the most difficult part of my employment with Respondent.
>
> * * *
>
> Upon information and belief, I believe that my management team treated me differently and terminated me because of my sex, my level of education as a female, being as homosexual female, and being in a homosexual relationship.

Doc. 5-1 at 3–5.

The EEOC issued Chacon a Notice of Right to Sue on March 20, 2024. Doc. 1 at ¶ 9. Chacon timely sued Wellsky for unlawful discrimination and retaliation under Title VII. Doc. 1. Wellsky then moved for partial dismissal, contending that Chacon did not exhaust her administrative remedies to bring a retaliation claim. Doc. 4.

**II**

Chacon's Complaint asserts a claim for Title VII retaliation. Doc. 1. But she did not exhaust her administrative remedies for that claim as required by law prior to filing suit. As a result, Wellsky's motion to dismiss is granted.[2]

Title VII prohibits discrimination "because of … sex" in certain private employment settings. 42 U.S.C. § 2000e-2(a)(1). In addition to outright discrimination, Title VII also extends to those who suffer retaliation because they complained to their employer about sex discrimination. 42 U.S.C. § 2000e-3(a); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020). To state a claim for Title VII retaliation, a plaintiff must show that the plaintiff engaged in protected activity, the employer took an adverse employment action against the plaintiff, and the employer took its adverse action because of the plaintiff's protected activity. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227–28 (10th Cir. 2008).

Before filing suit, a Title VII plaintiff must file a charge of discrimination with the EEOC describing the basis for the charge. *Sanderson*, 976 F.3d at 1170. The EEOC charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (internal quotations omitted). Then, the lawsuit is limited to what could "reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). A plaintiff's failure to mark a particular box on the EEOC charge indicating the basis for the charge "creates a presumption that the charging party is not asserting claims represented by that box." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). To rebut this presumption, the plaintiff must show that the charge "clearly sets forth the basis of the claim." *Id.*

---

[2] Wellsky also argues that Chacon failed to plead sufficient facts to state a plausible retaliation claim. Doc. 5 at 10–11. Given the resolution of Wellsky's exhaustion argument, it is unnecessary to Wellsky's *Twombly/Iqbal* argument.

Chacon did not check the retaliation box on her EEOC charge.[3] As a result, she must establish that she clearly set forth the basis for a retaliation claim in the charge. *Jones*, 502 F.3d at 1186. Wellsky's motion only concerns retaliation, that is whether Chacon alleged in her EEOC charge that Wellsky terminated her in retaliation for voicing opposition to Winkelmann about his differential treatment based on sex.

There is some common ground that frames this dispute. For example, the parties agree that Chacon's opposition to unethical business deals is not protected by Title VII. Doc. 9 at 5; Doc. 10 at 5. And Wellsky does not dispute that Chacon's EEOC charge set forth her claim of sex discrimination. Doc. 5 at 7. So, Wellsky's motion only seeks to dismiss Chacon's retaliation claim for failing to preserve that claim in the EEOC charge. *See id.*

Title VII makes it unlawful to discriminate based on sex, so opposing disparate treatment among men and women is a protected activity under Title VII. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202–03 (10th Cir. 2008). Not only did Chacon fail to check the box indicating that her claim involved retaliation, but she also failed to assert that she was pursuing such a claim. Nor are there any facts within

---

[3] Chacon did not attach her charge of discrimination to her Complaint, but Wellsky attached it to its motion to dismiss. Doc. 5-1. When deciding a motion to dismiss, only documents attached to the complaint, incorporated by reference in the complaint, or referred to in the complaint—if they are central to the complaint and indisputably authentic—may be considered. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Chacon referred to the EEOC charge in her Complaint, Doc. 1 at ¶ 8, and it is central to her claim. *See Davis v. BAE Sys. Tech. Sol. & Servs. Inc.*, 764 F. App'x 741, 742 n.1 (10th Cir. 2019) (finding an EEOC charge attached to the defendant's 12(b)(6) motion could be considered because the plaintiff referred to allegations in the complaint and the statements in the charge were relevant to pivotal issues in the case). In addition, Chacon does not dispute that the EEOC charge is authentic. As a result, Chacon's charge has been and properly may be considered in determining Wellsky's partial motion to dismiss. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1255 n.2 (10th Cir. 2025) (considering a screenshot attached to the defendant's motion to dismiss where the plaintiff did not dispute its authenticity and referred to the screenshot in the complaint).

her charge indicating that she was asserting that she was retaliated against for engaging in an activity made unlawful by Title VII.

Chacon's charge only states that she "tried to address" with Winkelmann that she noticed that the women he supervised had less opportunities than men. Doc. 5-1 at 3. This does not set forth an intention to assert a retaliation claim, much less a basis for pursuing one. For example, the charge does not explain what she said to Winkelmann nor any facts suggesting whether Winkelmann's conduct toward women was discriminatory. *Sanderson*, 976 F.3d at 1171 (finding that an EEOC charge that does not raise facts about the complaints made to supervisors does not sufficiently put the defendant on notice of a retaliation claim). Moreover, she makes no allegations that her termination was connected in any way to the sex-related concerns she "tried to address" with Winkelmann. *See Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1165 (10th Cir. 2018) (finding that an EEOC charge did not set forth a retaliation claim where the facts did not state that the plaintiff suffered an adverse employment action connected to the complaints made to a supervisor); *Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *2 (10th Cir. Oct. 24, 2023) (affirming dismissal on a Rule 12(b)(6) motion where the plaintiff failed to include facts in his EEOC charge that would prompt an investigation into his claims).

There are other contextual indications to suggest that Chacon did not allege retaliation in the EEOC charge. For example, she expressly lists the reasons she believes she was terminated as "sex, [her] level of education as a female, being a homosexual female, and being in a homosexual relationship." Doc. 5-1 at 4. Her charge of discrimination would not reasonably notify the EEOC that it also needed to investigate whether Chacon was terminated for opposing disparate treatment based on sex. *See Smith*, 904 F.3d at 1166 (relying on the plaintiff's statement in her EEOC charge stating why she believed she was fired to conclude that her charge of discrimination did not encompass her retaliation claim). As a result, she has not overcome the presumption that she did not exhaust her administrative remedies regarding her retaliation claim.

Chacon's arguments to the contrary are unpersuasive. She states in her response that she "saw that other women did not receive the same opportunities as men and tried to address that with him at the same time she conveyed her concerns over unconscionable deals." Doc. 10 at 5. The content of her EEOC charge—not the brief in opposition—

is the proper focus; it is irrelevant that her pleadings now make a retaliation claim. *Sanderson*, 976 F.3d at 1171–72 (explaining that the scope of the investigation is determined only by the allegations included in the EEOC charge itself). She also asserts that when the charge is read as a whole, it would be "reasonable for the EEOC to find that immediately after Plaintiff complained of discrimination, Winkelmann started to treat her with more disrespect and abrasiveness." Doc. 10 at 7. Again, that is not the appropriate inquiry. The standard is not whether the EEOC could reasonably interpret the charge to assert a retaliation claim. *Sanderson*, 976 F.3d at 1171–72. Instead, it is whether she asserted it in her charge. *Id.* And once Chacon failed to check the "retaliation" box on her charge of discrimination, she bears the burden to clearly set forth the existence and basis for a retaliation claim. *Jones*, 502 F.3d at 1186. She did not do so. As a result, she did not meet the threshold requirement of exhausting her administrative remedies before suing Wellsky for unlawful retaliation.

### III

For the foregoing reasons, Wellsky's Partial Motion to Dismiss, Doc. 4, is GRANTED.

It is so ordered.

Date: March 31, 2025          _s/ Toby Crouse_____
                              Toby Crouse
                              United States District Judge