In the United States District Court
for the District of Kansas

———————

Case No. 24-cv-02245-TC

———————

ASPEN CHACON,

*Plaintiff*

v.

WELLSKY,

*Defendant*

———————

## MEMORANDUM AND ORDER

Plaintiff Aspen Chacon sued her former employer, WellSky Corporation, alleging that WellSky unlawfully terminated her because of her sex and sexual orientation. Doc. 51. WellSky requests summary judgment and a continuation of the trial date. Docs. 52 & 63. For the following reasons, the motion for summary judgment is granted and the motion to continue trial is denied as moot.

## I

## A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

This is an employment discrimination case. In short, Chacon contends that WellSky fired her because she is a woman and a lesbian. The following, based largely on the parties' stipulated facts, Doc. 51 at ¶¶ 2.a.i–2.a.lxxi, reflects the context in which this lawsuit arose.[1]

WellSky is a software company. Doc. 51 at ¶ 2.a.i.[2] Chacon, who "identifies as a lesbian and did not hide her sexual orientation from her coworkers," *id.* at ¶ 3.a, began working at WellSky in March 202., *Id.* at ¶¶ 2.a.ii–2.a.iv. WellSky hired Chacon to sell its software to existing WellSky clients. *Id.* at ¶ 2.a.ix. Her direct supervisor was Nate Marcus. *Id.* at ¶ 2.a.xvii. Marcus's direct supervisor was Jeremy Henry, and Henry's was Aaron Winkelmann. Doc. 51 at ¶ 2.a.xvii.

---

[1] The Pretrial Order contains over seventy stipulations of fact, and Chacon does not contest most of WellSky's statements of uncontroverted fact. Doc. 58 at 2–7.

[2] All document citations are to the document and page number assigned in the CM/ECF system. All facts are uncontroverted unless otherwise specified.

In September 2021, WellSky placed Chacon on a performance improvement plan. Doc. 51 at ¶ 2.a.xvi. Chacon received a poor evaluation in 2021. *Id.* at ¶ 2.a.xx. Her performance eventually improved, and WellSky removed her from the performance improvement plan. *Id.* at ¶ 2.a.xix. After WellSky removed her from the plan, Chacon's work continued to improve. She did well in 2022 and received two awards from WellSky. *Id.* at ¶ 2.a.xxvii. WellSky promoted Chacon in July 2023. *Id.* at ¶ 2.a.xlv.

In 2023, Chacon started working on a new transaction with Franciscan Missionaries of Our Lady Health System (FMOL). Doc. 51 at ¶ 2.a.xxx. She eventually closed that transaction as forecasted. *Id.* at ¶ 2.a.xxxiii. Later in 2023, Chacon began to work on two new transactions with Alberta Health Services (AHS). *Id.* at ¶¶ 2.a.xlvii, 2.a.xlix. Her work with AHS ultimately led to her termination.

WellSky received complaints from an AHS employee and discovered that Chacon had made several mistakes on the transaction. In particular, Chacon sent price quotes and order forms to AHS for the two transactions. Doc. 51 at ¶ 2.a.liii. Kathy Ervin, an AHS employee, emailed Chacon to complain that the price quotes were higher than AHS expected. Doc. 53 at ¶ 65. Chacon copied Winkelmann (her boss three steps up the chain of command) to the email thread between her and Ervin. *Id.* at ¶ 66. Winkelmann then reached out to Ervin to see about her concerns. Doc. 51 at ¶ 2.a.lv. After speaking with Ervin, Winkelmann realized that Chacon had made various mistakes when working with Ervin. Doc. 53 at ¶ 68. Specifically, Chacon had failed to explain some documents to Ervin, who was confused as a result; Chacon had sent documents containing errors and did not send updated documents; and Chacon had sent documents with redline comments. Doc. 53 at ¶¶ 71, 72.

Winkelmann reached out to Marcus, Chacon's supervisor, and Henry, Marcus's supervisor, to talk about Chacon's errors. Doc. 51 at ¶ 2.a.lvi. Henry contacted Kristine Ruhl from WellSky's human resources department to discuss what to do about Chacon's errors. *Id.* at ¶¶ 2.a.lvii, 2.a.lviii. Henry then contacted Winkelmann. *Id.* at ¶ 2.a.lx. Henry was particularly concerned because Chacon's mistakes were "fundamental errors" that had cost WellSky "a few hundred thousand dollars," and because the nature of the mistakes showed that Chacon's performance improvement plan was ultimately ineffective. Doc. 53 at ¶ 78. Winkelmann told Henry that it was Henry's team to manage and

thus Henry's call whether to fire Chacon: Henry chose to do so. Doc. 51 at ¶¶ 2.a.lxii, 2.a.lxi.

Chacon's claims revolve around alleged disparate treatment between her and Ryan Greger, another employee at WellSky. Doc. 58 at 16. A description of the events surrounding Greger's hiring and job assignments will provide context for Chacon's claim.

The same day that WellSky hired Chacon, it also hired Greger. Doc. 51 at ¶ 2.a.v. Greger had the same job as Chacon, but he was focused on a different geographic territory. *Id.* at ¶ 2.a.x. At some point after he was hired, Greger applied for a new position at WellSky. *Id.* at ¶ 2.a.xxxix. He interviewed for the position and got it. *Id.* at ¶ 2.a.xliii. The parties agree that Greger was qualified for that position. Doc. 53 at ¶ 50. Chacon did not apply for that position. Doc. 51 at ¶ 2.a.ix.

In January 2023, Greger began to work on a new transaction with Geisinger System Services. Doc. 51 at ¶ 2.a.xxxiv. Greger initially valued the Geisinger transaction at $1.6 million. *Id.* at ¶ 2.a.xxxvi. He eventually closed the Geisinger transaction for roughly $1.35 million, about $200,000 less than his original estimate. *Id.* at ¶ 2.a.xxxvii.

Chacon filed suit in federal court after her termination. Doc. 1. She brings two counts under Title VII: Count I for discrimination because of sex, Doc. 51 at ¶ 4.a.i, and Count II for discrimination because of sexual orientation, *id.* at ¶ 4.a.ii.

WellSky requests summary judgment on both counts. Doc. 52. It argues that Chacon has failed to make a prima facie claim of discrimination on both counts, that it had legitimate reasons for terminating Chacon, and that its reasons were not pretextual. *See generally id.*

## II

Chacon has not made a prima facie claim of discrimination. And WellSky offers legitimate, nondiscriminatory business reasons for its decision to terminate Chacon. Accordingly, WellSky's motion is granted.

### A

Chacon asserts that she was fired in violation of Title VII because of her sex and sexual orientation. Doc. 51 at ¶ 4.a. Title VII makes it

unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that Title VII prohibits discrimination on the basis of sexual orientation. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 683 (2020). A Title VII plaintiff bears the ultimate burden of proving intentional discrimination by the employer. *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019).

Where, as here, the plaintiff only has indirect evidence of discrimination, the case proceeds under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). Under that framework the plaintiff has the initial burden of establishing a prima facie claim of unlawful discrimination. *Id.* If she does so, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for taking its adverse action. *Id.* at 970. If the defendant satisfies that burden, the burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were pretextual—i.e., "not the true reason for the employment decision." *Id.*

### B

### 1

WellSky first argues that Chacon has not shown a prima facie claim of sex or sexual orientation discrimination. Doc. 53 at 22. "[A] prima facie case requires evidence that: (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (quotation marks omitted); *see Crowe v. Wormuth*, 74 F.4th 1011, 1035 (9th Cir. 2023) (using this framework for a prima facie sexual orientation claim). The "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000). The parties agree that Chacon belongs to a protected class because she is a woman and a

---

[3] Neither party contends that there is any direct evidence of discrimination, and each analyzes Chacon's claims under *McDonnell Douglas*. *See* Docs. 53 at 21 & 58 at 14.

lesbian. Doc. 51 at ¶¶ 2.a.iii, 2.a.iv. They further agree that Chacon's termination was an adverse employment action. *Id.* at 2.a.lxi. But WellSky argues that Chacon has offered no evidence that her termination occurred under circumstances giving rise to an inference of discrimination.

Chacon's claims fail because there is no evidence that her termination gives rise to an inference of unlawful discrimination. *Contra* Doc. 58 at 15. In particular regarding her claim of sexual orientation discrimination, there is no evidence that either Henry, whom Chacon concedes was responsible for firing her, or Winkelmann knew that Chacon was a lesbian. Doc. 51 at ¶ 2.a.lxi; Doc. 53 at ¶¶ 7, 14. This is fatal to Chacon's prima facie claim of sexual orientation discrimination, for she must show that she was fired *because of* her sexual orientation. 42 U.S.C. § 2000e-2(a)(1) (prohibiting termination "because of" sex); *accord Bostock*, 590 U.S. at 657–58; *see Lindsay v. Denver Pub. Schs.*, 88 F.4th 1323, 1331 (10th Cir. 2023) (affirming summary judgment where there was no evidence that the employer was aware that the plaintiff had engaged in a protected activity); *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 990 (10th Cir. 2021) (finding no prima facie claim where the employer was unaware of the plaintiff's disability); *see also Belcher v. Boeing Com. Airplane Grp.*, 105 F. App'x 222, 226 (10th Cir. 2004) (finding no prima facie claim of race discrimination because the employer was unaware of the plaintiff's race). "[A]n employer's knowledge of the employee's protected status is part and parcel of establishing a status-based discrimination claim." *Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.*, 697 F. Supp. 3d 112, 121 (S.D.N.Y. 2023). "[T]he inference of discrimination does not make sense when the decisionmaker is unaware of the [employee's] membership in a protected class." *Belcher*, 105 F. App'x at 226; *see also Lindsay*, 88 F.4th at 1327–28 (quoting *Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)) ("After all, 'an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of the anti-discrimination statute.'").

Chacon's attempt to controvert this fact fails. *See* Doc. 58 at ¶¶ II.2–II.4. She admits that she never heard Henry speak negatively about women or homosexuals. Doc. 53 at ¶ 13. And she admits that she does not know whether Henry knew of her sexual orientation. Doc. 58 at ¶ II.4. Wellsky's evidence is that neither Winkelmann nor Henry knew of her sexual orientation: Winkelmann testified that he did not know Chacon was a lesbian and had never seen her

screensaver, Doc. 58-3 at 3; Henry testified that he also did not know that Chacon was a lesbian, Doc. 58-4 at 3. Chacon attempts to controvert WellSky's assertion, noting that she had a screensaver on her phone, Doc. 58-16, which showed her and her girlfriend in "close proximity." Doc. 58 at 16. Further, she notes that there were "ample opportunities" for Winkelmann and Henry to have seen the screensaver. *Id.* at ¶¶ II.2, II.4. And she further argues that other employees at WellSky knew of her sexual orientation and "this information could have been shared" with Winkelmann and Henry. *Id.* But these arguments are just speculation as to what the decisionmakers might have known or could have learned. There is no evidence that they did. Chacon's unsubstantiated speculation is insufficient to create a genuine dispute concerning whether either Winkelmann or Henry knew she was a lesbian. *See McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). Even when looking at the record in the light most favorable to Chacon, there is no evidence indicating that Henry or Winkelmann knew of Chacon's sexual orientation.

Chacon points to other facts in support of her prima facie claims of sex and sexual orientation discrimination, but those facts do not raise an inference of unlawful discrimination. *Contra* Doc. 58 at 16. Chacon argues that, to her, WellSky felt like a "boys' club" where Henry often referred to her as "kid" while referring to men as "doctor." *Id.* at 19, 20. But Chacon fails to explain how Henry's comments, which were unrelated to her termination or the reasons for it, show that she was terminated because of her sex or sexual orientation. "Isolated or ambiguous comments are too abstract to support a finding of discrimination." *Mauldin v. Driscoll*, 136 F.4th 984, 997 (10th Cir. 2025) (alterations omitted); *see Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (affirming the district court's finding that a racist joke did not give rise to an inference of discrimination when there was "no nexus" between the joke and the plaintiff's termination). Chacon must demonstrate "*how* [Henry's comments] are evidence of discrimination." *Mauldin*, 136 F.4th at 997 (emphasis in original). Her claims fail because she has not done that.

Chacon also argues that her colleague, Greger, received preferential treatment. Doc. 58 at 16. In particular, she points to alleged preferential treatment that Greger received regarding the Geisinger transaction and his application for a new position. *Id.* Specifically, she argues that WellSky helped Greger with the Geisinger transaction but did not

7

help her with the FMOL transaction. *Id.* at 17. And she argues that WellSky supported Greger when he applied for a new position but did not support her. *Id.* at 18–19.

A plaintiff can establish that her adverse employment action occurred under circumstances giving rise to an inference of discrimination by showing that similarly situated employees were treated more favorably. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007). Employees are similarly situated if they "deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of "comparable seriousness." *Id.* at 802.

The record does not support Chacon's assertions that Greger received preferential treatment with the Geisinger transaction or his application for a new position. *Contra* Doc. 58 at 17–19. Chacon argues that Greger testified that he received help from WellSky leadership on the Geisinger deal. *Id.* at ¶ III.P10. But that is not what Greger said: When asked in his deposition whether Winkelmann helped him, Greger responded: "I don't think so." Doc. 58-5 at 5. Greger noted: "The heavy, heavy majority of this deal was closed by myself, yes." *Id.* Nor does Chacon identify any evidence suggesting that WellSky helped Greger because he is a man, who might have aided him, or that she sought and was denied similar assistance. Put simply, it is unclear how his situation—for a different client—suggests that Chacon's termination might give rise to an inference of discrimination. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018) (inference of discrimination can be shown through actions that reflect discriminatory animus, preferential treatment, and pattern of recommending or failing to recommend plaintiff for positions for which she is not qualified or over qualified).

The same is true concerning Chacon's contention that Greger received preferential treatment when he applied for a new position. For one thing, her argument rests on hearsay. Greger's statement to Chacon that he was encouraged to apply for the new position is a statement that he did not make "while testifying at the current trial or hearing" and which Chacon offers "to prove the truth of the matter asserted." Fed. R. Evid. 801(c); *see* Doc. 58 at ¶ II.7; Doc. 58-2 at 14; *see also Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1249 (10th Cir. 2013) (declining to consider hearsay in opposition to summary judgment). As a result, she has not established that Greger's statement is admissible. *Meyers v. E. Oklahoma Cnty. Tech. Ctr.*, 776 F.3d 1201, 1209

(10th Cir. 2015) (quoting *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995)) ("[Rule] 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment."). For another, it fails to show that sexual orientation or gender had anything to do with her termination. There is no dispute that the new position was posted to the public and that Chacon did not apply for it. Doc. 53 at ¶ 45; Doc. 51 at ¶ 2.a.ix; *see Bennett*, 792 F.3d at 1267–68 (finding no prima facie claim where the plaintiff argued that male employees received an accommodation but "conceded she did not request any such accommodation"). And in any event, WellSky's treatment of Greger concerning his application for another job (or the Geisinger work) fails to suggest that Chacon was fired unlawfully because of her gender or sexual orientation. *Cf. Lincoln*, 900 F.3d at 1192–93 (noting that the prima facie inquiry focuses on "whether the circumstances surrounding the adverse employment action give rise to an inference that *the action* was based on the plaintiff's disability") (emphasis added) (quotations and alterations omitted); *see PVNF*, 487 F.3d at 801 (noting that an employee is similarly situated if he "engaged in conduct of comparable seriousness").

2

Even assuming that Chacon had evidence to satisfy her prima facie case, her claim still fails. That is because WellSky identifies a legitimate, non-discriminatory reason for her termination and Chacon lacks evidence suggesting that WellSky's reason was pretext.

**a.** WellSky argues that even assuming Chacon made a prima facie claim, it had a legitimate nondiscriminatory reason for its decision. Doc. 53 at 28. When a plaintiff meets her burden of stating a prima facie claim, the burden shifts to the employer to provide a legitimate reason for its decision. *Lincoln*, 900 F.3d at 1193. The burden to establish a legitimate, nondiscriminatory reason is "exceedingly light." *DePaula*, 859 F.3d at 970. On a motion for summary judgment, a defendant need only "articulate a reason for the [action] that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quotations omitted). It "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

WellSky has met that burden. It asserts that it terminated Chacon for poor performance. Doc. 53 at 29. The Tenth Circuit has held that

9

poor performance is a legitimate reason to terminate an employee. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("Poor performance is a quintessentially legitimate and nondiscriminatory reason for termination."). Chacon makes no meaningful argument to the contrary. Doc. 58 at 20.

**b.** Once an employer satisfies its obligation to identify a lawful reason for the termination, the burden returns to the employee to show that the reason for her termination was pretext for discrimination. *Lincoln*, 900 F.3d at 1193. A plaintiff "may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Id.* (quoting *DePaula*, 859 F.3d at 970). In other words, a plaintiff may show that the defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

Pretext probes the true intentions of the defendant, so the focus is limited to "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). A court's role "is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. S.W. Bell Tele. Co.*, 845 F.3d 1299, 1312 (10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). All facts are examined "as they appear *to the person making the decision*, not as they appear to the plaintiff." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation and internal quotations omitted) (emphasis in original). Any doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough to show pretext. *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).

Chacon makes two main arguments in support of pretext. Doc. 58 at 20–24. Both fail.

*First*, Chacon takes issue with her poor performance. In essence, she challenges the merits underlying the decision to fire her. She takes issue generally with the determination that she committed errors in the AHS transaction and "disputes these as actual errors." Doc. 58 at 23; *see* Doc. 58 at 21–24. But her subjective assessment of her performance is immaterial; the relevant inquiry is whether WellSky believed that

Chacon performed poorly. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007). Even if WellSky erroneously concluded that Chacon's mistakes were more serious than they were, and even if Chacon had not actually made any errors, that would not show pretext. *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) (quoting *Medley v. Polk Co.*, 260 F.3d 1202, 1208 (10th Cir. 2001)) (noting that "when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection"); *Archuleta v. Colorado Dep't of Institutions, Div. of Youth Servs.*, 936 F.2d 483, 487 (10th Cir. 1991) ("Title VII does not ensure that employees will always be treated fairly or that they will be discharged only for meritorious reasons. Although the dismissal of an employee without cause may contribute to an inference of unlawful discrimination, it does not require such a finding."). There is no dispute that Winkelmann emerged from his conversation with Ervin convinced that Chacon had made several mistakes. Doc. 53 at ¶¶ 71, 72. Chacon does not explain why that is not enough. *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1146 (10th Cir. 2009) (finding no pretext for an adverse employment decision based on poor performance); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (same); *Brown v. Unified Sch. Dist. No. 501*, 822 F. App'x 710, 714 (10th Cir. 2020) (same).

*Second*, Chacon argues that inconsistencies surrounding her promotion and her performance show pretext. Doc. 58 at 23–24. Specifically, she argues that Winkelmann told her that she was being promoted because her performance had improved, but that Henry claimed after terminating her that he promoted her "to encourage her to snap back in line as a quality worker, insinuating she had never really been worthy of the promotion in the first place." Doc. 58 at 24. And she argues that WellSky was monitoring her performance but that no one told her that. *Id.*

Chacon's arguments do not suggest pretext. She does not explain how comments regarding her promotion or how any monitoring of her performance show that her superiors' belief that she should be terminated for poor performance was pretext for unlawful discrimination. Chacon concedes that Winkelmann and Henry concluded that she made errors in the AHS transaction, Doc. 53 at ¶¶ 71 and 72, and WellSky has consistently maintained that that is why it fired her. *Id.* at ¶¶ 78–81. And, even if WellSky had offered inconsistent reasons for why it fired Chacon, that alone would not be enough to show pretext.

*See Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1311 (10th Cir. 2005) (noting that "the mere fact that the [employer] has offered different explanations for its decision does not create a genuine question of pretext"); *see also Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1291 (10th Cir. 2022) ("[P]retext cannot be established by the mere fact that the employer has offered different explanations for its decision.").

### III

For the foregoing reasons, WellSky's Motion for Summary Judgment, Doc. 52, is GRANTED, and its Motion to Continue, Doc. 63, is DENIED AS MOOT.

It is so ordered.


Date: February 25, 2026                s/ Toby Crouse _____
                                                Toby Crouse
                                                United States District Judge